## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ROBERT L. BRADLEY, JR., | ) | |
| 510 Fifth Street N.E. | ) | Civil Action No. _____ |
| Pawnee, OK 74058 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AUDREY HOGAN, | ) | |
| 9550 Fremont Avenue | ) | |
| Apartment D-7 | ) | |
| Montclair, CA 91763 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LLOYD HURD, | ) | |
| 6419 Wimbledon Villas | ) | |
| Spring, TX 77379 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHELSEY D. MCIVOR, | ) | |
| 404 West Montcastle Drive | ) | |
| Greensboro, NC 27406 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHERRY LYNN MEADOWS, | ) | |
| Post Office Box 669 | ) | |
| Mendenhall, MS 39114 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JAMES D. PIRO, | ) | |
| 8529 Manor Avenue | ) | |
| Apartment B | ) | |
| Munster, IN 46321 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALBERT E. SHULTZ, | ) | |
| 1771 S.E. Tenth Street | ) | |
| Ft. Lauderdale, FL 33316 | ) | |
| | ) | |
| Plaintiffs, | ) | |

```
                                         )
v.                                       )
                                         )
MEDTRONIC, INC.,                         )
710 Medtronic Parkway,                   )
Minneapolis, MN, 55432                   )
                                         )
              Defendant.                 )
```

## NOTICE OF REMOVAL

Defendant Medtronic, Inc. ("Medtronic"), a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, by and through its undersigned counsel, hereby provides notice pursuant to 28 U.S.C. § 1446 of its removal of the above-captioned case from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia. The grounds for removal are as follows:

1.     Plaintiffs commenced this action by filing a complaint on June 6, 2008 in the Superior Court for the District of Columbia, and the case was docketed at 08-4185.

2.     Copies of the complaint and summons were served upon Medtronic on June 11, 2008. A true and correct copy of the complaint and summons are attached hereto as Exhibit A. No other pleadings or papers have been filed in this litigation.

3.     Under 28 U.S.C. § 1446(b), this Notice of Removal must be filed within 30 days of the service upon Medtronic of the complaint and summons. Since Medtronic is filing this Notice on June 30, 2008, removal is timely.

4.     The time for Medtronic to answer, move, or otherwise plead with respect to the complaint has not yet expired.

5.     Concurrent with the filing of this Notice, Medtronic is serving this Notice on Plaintiffs' counsel and filing a copy of the Notice with the Clerk of the Superior Court for the District of Columbia. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(d) and 1441(a),

because the United States District Court for the District of Columbia is the federal judicial district and division embracing the Superior Court for the District of Columbia, where this action was originally filed.

6.      By filing a Notice of Removal in this matter, Medtronic does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Medtronic specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

## DIVERSITY OF CITIZENSHIP

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity jurisdiction exists where (1) the suit is between citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *Greene v. Am. Fed'n of Gov't Employees*, No. 05-0408 (RMU), 2005 U.S. Dist. LEXIS 19983, at *4 (D.D.C. 2002).

8.      Complete diversity exists between the parties to this action. Medtronic is a Minnesota corporation with its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota, and thus is a citizen of Minnesota. *See* Compl. p. 2; Exhibit B hereto (Affidavit of Keyna P. Skeffington); *Branson v. Medtronic, Inc.*, No. 5:06-cv-332-Oc-10GRJ, 2007 WL 170094, at *4 (M.D. Fla. Jan. 18, 2007) (denying plaintiff's motion to remand following removal by Medtronic on the ground that Medtronic's principal place of business is in Minnesota).

9.      Upon information and belief, each of the Plaintiffs is a citizen of a state other than Minnesota (Oklahoma, California, Texas, North Carolina, Mississippi, Indiana, and Florida). Compl. pp. 1-2; *see also id.* at ¶¶ 3, 29, 55, 81, 107, 133, and 159.

10.     Accordingly, complete diversity exists in this action.

3

## AMOUNT IN CONTROVERSY

11.    The amount in controversy requirement of 28 U.S.C. § 1332 is also satisfied. Under 28 U.S.C. § 1332(a), the amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs. *Nwachukwu v. Karl*, 223 F.Supp.2d 60, 65 (D.D.C. 2002).   "Punitive damages are properly considered as part of the amount in controversy." *Id.* at 66.

12.    Here, Plaintiffs each seek damages far in excess of $75,000.   Each Plaintiff alleges significant injuries caused by Medtronic's leads.  Compl. ¶¶ 5, 32, 58, 84, 110, 136, and 162.   Indeed, each Plaintiff specifically "demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs." *Id.* at pp. 29-30.   The amount in controversy requirement is plainly satisfied where, as here, a plaintiff specifically requests damages in an amount greater than the jurisdictional minimum. *E.g., Windsor v. Whitman-Walker Clinic, Inc.*, 512 F.Supp.2d 66, 68 n.3 (D.D.C. 2007) (recognizing diversity jurisdiction for removal where plaintiff sought damages of $3,000,000).

13.    Because both of the requirements for federal diversity jurisdiction are satisfied, this case is removable by Medtronic.

WHEREFORE, Notice is given that this action is removed from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.

DATED:  June 30, 2008                Respectfully submitted,

MEDTRONIC, INC.


By: _____

        David M. Gossett
D.C. Bar and D.D.C. Bar No. 468390

Michael E. Lackey, Jr.
David M. Gossett
Mayer Brown LLP
1909 K Street, Northwest
Washington, D.C. 20006-1101
mlackey@mayerbrown.com
dgossett@mayerbrown.com
(202) 263-3000 (t)
(202) 263-3300 (f)

*Attorneys for Defendant*
*Medtronic, Inc.*

5

## CERTIFICATE OF SERVICE

I, David M. Gossett, an attorney, certify that I caused a copy of the attached Defendant, Medtronic, Inc.'s Notice of Removal to be served by sending the same by U.S. mail, postage prepaid, on June 30, 2008, addressed to the following:

> Aaron M. Levine
> Brandon J. Levine
> Renee L. Robinson-Meyer
> Steven J. Lewis
> Benjamin J. Cooper
> 1320 19th Street, N.W., Suite 500
> Washington, D.C. 20036
> Fax: (202) 833-8046

David M. Gossett

6

# EXHIBIT A

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process Transmittal**
06/11/2008
CT Log Number 513516494

RECEIVED

JUN 1 2 2008

LAW DEPARTMENT
MEDTRONIC, INC.

| | |
|---|---|
| **TO:** | Vicki Tersteeg<br>Medtronic, Inc.<br>MS: LC300, 710 Medtronic Parkway<br>Minneapolis, MN 55432-5604 |
| **RE:** | **Process Served in District of Columbia** |
| **FOR:** | Medtronic, Inc. (Domestic State: MN) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robert L. Bradley, Jr., et al. Pltfs. vs. Medtronic, Inc., Dft. |
| **DOCUMENT(S) SERVED:** | Initial Order, Addendum, Summons, Complaint |
| **COURT/AGENCY:** | Superior Court - Civil Division, DC<br>Case # 0004185-08 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - Medtronic 7231CX ICD with a Sprint Fidelis lead model 6949 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Washington, DC |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 06/11/2008 postmarked on 06/06/2008 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Aaron M. Levine<br>Law Offices of Aaron M. Levine & Associates<br>Sunderland Place<br>1320 Nineteenth Street, NW<br>Suite 500<br>Washington, DC 20036<br>202-833-8040 |
| **ACTION ITEMS:** | Telephone, Vicki Tersteeg , 763-505-2671<br>*Spoke with Vicki Tersteeg on 6/11/08 at 12:03 p.m.*<br>SOP Papers with Transmittal, via  Fed Ex Standard Overnight , 790524335869<br>Email Notification, Vicki Tersteeg VICKI.ANN.TERSTEEG@MEDTRONIC.COM<br>Email Notification, Anne Sederstrom ANNE.SEDERSTROM@MEDTRONIC.COM |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Mark Diffenbaugh<br>1015 15th Street, N.W.<br>Suite 1000<br>Washington, DC 20005<br>202-572-3133 |

Page 1 of  1 / MH

Information displayed on this transmittal is for CT Corporation's
record keeping purposes only and is provided to the recipient for
quick reference. This information does not constitute a legal opinion
as to the nature of action, the amount of damages, the answer date,
or any information contained in the documents themselves.
Recipient is responsible for interpreting said documents and for
taking appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ROBERT L. BRADLEY JR.
   Vs.                          C.A. No.     2008 CA 004185 B
MEDTRONIC, INC.

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge BRIAN F HOLEMAN
Date:  June 6, 2008
Initial Conference: 9:30 am, Friday, September 12, 2008
Location:  Courtroom A-49
              515 5th Street NW
              WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| ROBERT L. BRADLEY, JR., et al. | |
| *Plaintiff* | **0004185-08** |
| **VS.** | Civil Action No. [            ] |
| MEDTRONIC, INC. | |
| *Defendant* | |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | | |
|---|---|---|
| AARON M. LEVINE | | |
| Name of Plaintiff's Attorney | By _____ | |
| 1320 Nineteenth Street N.W., Fifth Floor | | *Deputy Clerk* |
| Address | | |
| Washington, DC 20036 | | |
| (202) 833-8040 | Date | JUN - 6 2008 |
| Telephone | | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93    **NOTE:** SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ROBERT L. BRADLEY, JR.,          }
510 Fifth Street N.E.            }
Pawnee, OK 74058                 }
                                 }
    and                          }        Civil Action No.
                                 }
AUDREY HOGAN,                    }         0004185-08
9550 Fremont Avenue              }
Apartment D-7                    }
Montclair, CA 91763              }
                                 }
and                              }
                                 }
LLOYD HURD,                      }
6419 Wimbledon Villas            }
Spring, TX 77379                 }
                                 }
and                              }
                                 }
CHELSEY D. MCIVOR,               }
404 West Montcastle Drive        }
Greensboro, NC 27406             }
                                 }
and                              }
                                 }
SHERRY LYNN MEADOWS,             }
Post Office Box 669              }
Mendenhall, MS 39114             }
                                 }
and                              }
                                 }
JAMES D. PIRO,                   }
8529 Manor Avenue                }
Apartment B                      }
Munster, IN 46321                }
                                 }
and                              }
                                 }

RECEIVED
Civil Clerk's Office

JUN 0 6 2008

Superior Court of the
District of Columbia
Washington, D.C.

1

ALBERT E. SHULTZ,                           }
1771 S.E. Tenth Street                      }
Fort Lauderdale, FL 33316                   }
                                            }
            Plaintiffs,                     }
                                            }
      v.                                    }
                                            }
MEDTRONIC, INC.,                            }
710 Medtronic Parkway                       }
Minneapolis, MN 55432                       }
w/s/o CT CORPORATION SYSTEM                 }
      1015 15th Street, NW, #1000           }
      Washington, DC 20005                  }
                                            }
            Defendant.                      }
‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿‿ }

## COMPLAINT
### (ICD Litigation – Products Liability, Punitive Damages)

1.     Jurisdiction is founded upon 11 D.C. Code §921 (1981 ed.).

2.     At all relevant times, Defendant Medtronic, Inc. ("Medtronic") is engaged, or has been engaged, in the testing, manufacturing, licensing, marketing, selling, promoting, and distributing, either directly or indirectly through third parties, of implantable cardioverter defibrillators ("ICDs") and/or ICD leads throughout the United States, and is doing business in the District of Columbia.

## COUNT I
### (Negligence – Robert Bradley, Jr.)

3.     On or about November 9, 2006, Plaintiff Robert Bradley, Jr. purchased and was implanted with a Medtronic 7231CX ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the South Crest Hospital in Tulsa, Oklahoma.

4.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

2

5.    As a result of Medtronic's defective ICD leads, Plaintiff Robert Bradley, Jr. requires ongoing medical monitoring and may require surgery to replace said defective device.

6.    As a result of Medtronic's defective ICD leads, Plaintiff Robert Bradley, Jr. suffered injuries, including, but not limited to, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

7.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT II
### (Strict Liability – Robert Bradley, Jr.)

8.    All of the allegations in Count I are reincorporated and alleged herein by reference.

9.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Robert Bradley, Jr.

10.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Robert Bradley, Jr.

11.    The subject ICD lead implanted in Plaintiff Robert Bradley, Jr. was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

12.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Robert Bradley, Jr., in the condition in which it sold them.

13.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

14.    Said product was defective and unreasonably dangerous when put to its intended use.

15.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Robert Bradley, Jr. was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

16.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Robert Bradley, Jr. for his ICD lead-related injuries, losses, and damages.

## COUNT III
### (Breach of Warranty – Robert Bradley, Jr.)

17.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

18.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

4

19. Medtronic knew, or should have known, that patients, including Plaintiff Robert Bradley, Jr. and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

20. At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

21. As a direct result of the breach of warranties by Medtronic, Plaintiff Robert Bradley, Jr. has been injured as aforesaid.

**COUNT IV**
**(Misrepresentation – Robert Bradley, Jr.)**

22. All of the allegations contained in Counts I, II, and III are realleged and incorporated herein by reference.

23. Medtronic represented to patients, including Plaintiff Robert Bradley, Jr. and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

24. Plaintiff Robert Bradley, Jr. and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

25. At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

26. As a direct result of said false representations by Medtronic, Plaintiff Robert Bradley, Jr. was injured as aforesaid.

## COUNT V
### (Punitive Damages – Robert Bradley, Jr.)

27.     All of the allegations contained in Counts I, II, III, and IV are realleged and incorporated herein by reference.

28.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Robert Bradley, Jr.'s implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.  Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Robert Bradley, Jr. by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT VI
### (Negligence – Audrey Hogan)

29.     On or about November 29, 2005, Plaintiff Audrey Hogan purchased and was implanted with a Medtronic 7288 ICD with a Sprint Fidelis lead model 6949.  The device and leads were implanted at the Sequoia Hospital in Redwood City, California.

30.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

31.     As a result of Medtronic's defective ICD leads, Plaintiff Audrey Hogan requires ongoing medical monitoring and may require surgery to replace said defective device.

6

32.    As a result of Medtronic's defective ICD leads, Plaintiff Audrey Hogan suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

33.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

**COUNT VII**
**(Strict Liability – Audrey Hogan)**

34.    All of the allegations in Count VI are reincorporated and alleged herein by reference.

35.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Audrey Hogan.

36.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Audrey Hogan.

37.    The subject ICD lead implanted in Plaintiff Audrey Hogan was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

38.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Audrey Hogan, in the condition in which it sold them.

39.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

40.    Said product was defective and unreasonably dangerous when put to its intended use.

41.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Audrey Hogan was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

42.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Audrey Hogan for her ICD lead-related injuries, losses, and damages.

## COUNT VIII
### (Breach of Warranty – Audrey Hogan)

43.    All of the allegations contained in Counts I and II are realleged and incorporated herein by reference.

44.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

45.    Medtronic knew, or should have known, that patients, including Plaintiff Audrey Hogan and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

46.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

8

47.     As a direct result of the breach of warranties by Medtronic, Plaintiff Audrey Hogan has been injured as aforesaid.

## COUNT IX
### (Misrepresentation – Audrey Hogan)

48.     All of the allegations contained in Counts VI, VII, and VIII are realleged and incorporated herein by reference.

49.     Medtronic represented to patients, including Plaintiff Audrey Hogan and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

50.     Plaintiff Audrey Hogan and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

51.     At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

52.     As a direct result of said false representations by Medtronic, Plaintiff Audrey Hogan was injured as aforesaid.

## COUNT X
### (Punitive Damages – Audrey Hogan)

53.     All of the allegations contained in Counts VI, VII, VIII, and IX are realleged and incorporated herein by reference.

54.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Audrey Hogan's implant, had actual and constructive notice that the subject ICD

leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Audrey Hogan by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XI
### (Negligence – Lloyd Hurd)

55.    On or about October 31, 2005, Plaintiff Lloyd Hurd purchased and was implanted with a Medtronic Model D154ATG ICD with a Sprint Fidelis lead model 6949.  The device and leads were implanted at St. Luke's Episcopal Hospital in Houston, Texas.

56.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

57.    As a result of Medtronic's defective ICD leads, Plaintiff Lloyd Hurd required surgery to cap and replace said defective lead on or about April 9, 2008, at St. Luke's Episcopal Hospital in Houston, Texas.

58.    As a result of Medtronic's defective ICD leads, Plaintiff Lloyd Hurd suffered injuries, including, but not limited to, lead replacement surgery, incurred medical expenses for care and treatment, and suffered physical and mental pain.

59.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent

10

design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICDs and ICD leads.

**COUNT XII**
**(Strict Liability – Lloyd Hurd)**

60.     All of the allegations in Count XI are reincorporated and alleged herein by reference.

61.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Lloyd Hurd.

62.     While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Lloyd Hurd.

63.     The subject ICD lead implanted in Plaintiff Lloyd Hurd was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

64.     Medtronic expected the ICD leads to reach consumers, including Plaintiff Lloyd Hurd, in the condition in which it sold them.

65.     Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

66.     Said product was defective and unreasonably dangerous when put to its intended use.

11

67.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Lloyd Hurd was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

68.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Lloyd Hurd for his ICD lead-related injuries, losses, and damages.

## COUNT XIII
### (Breach of Warranty – Lloyd Hurd)

69.    All of the allegations contained in Counts XI and XII are realleged and incorporated herein by reference.

70.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

71.    Medtronic knew, or should have known, that patients, including Plaintiff Lloyd Hurd and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

72.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

73.    As a direct result of the breach of warranties by Medtronic, Plaintiff Lloyd Hurd has been injured as aforesaid.

## COUNT XIV
### (Misrepresentation – Lloyd Hurd)

74.    All of the allegations contained in Counts XI, XII, and XIII are realleged and incorporated herein by reference.

12

75.     Medtronic represented to patients, including Plaintiff Lloyd Hurd and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

76.     Plaintiff Lloyd Hurd and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

77.     At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

78.     As a direct result of said false representations by Medtronic, Plaintiff Lloyd Hurd was injured as aforesaid.

## COUNT XV
### (Punitive Damages – Lloyd Hurd)

79.     All of the allegations contained in Counts XI, XII, XIII and XIV are realleged and incorporated herein by reference.

80.     The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Lloyd Hurd's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.     Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Lloyd Hurd by knowingly and

13

intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XVI
### (Negligence – Chelsey McIvor)

81.     On or about September 21, 2006, Plaintiff Chelsey McIvor purchased and was implanted with a Medtronic D154ATG ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the University of North Carolina Hospital in Chapel Hill, North Carolina.

82.     On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

83.     As a result of Medtronic's defective ICD leads, Plaintiff Chelsey McIvor requires ongoing medical monitoring and may require surgery to replace said defective device.

84.     As a result of Medtronic's defective ICD leads, Plaintiff Chelsey McIvor suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

85.     Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XVII
### (Strict Liability – Chelsey McIvor)

86.     All of the allegations in Count XVI are reincorporated and alleged herein by reference.

87.     Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads,

14

which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Chelsey McIvor.

88.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Chelsey McIvor.

89.    The subject ICD lead implanted in Plaintiff Chelsey McIvor was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

90.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Chelsey McIvor, in the condition in which it sold them.

91.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved.  The risks were greater than a reasonable buyer would expect.

92.    Said product was defective and unreasonably dangerous when put to its intended use.

93.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Chelsey McIvor was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

94.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Chelsey McIvor for her ICD lead-related injuries, losses, and damages.

## COUNT XVIII
### (Breach of Warranty – Chelsey McIvor)

95.    All of the allegations contained in Counts XVI and XVII are realleged and incorporated herein by reference.

96.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

97.    Medtronic knew, or should have known, that patients, including Plaintiff Chelsey McIvor and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

98.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

99.    As a direct result of the breach of warranties by Medtronic, Plaintiff Chelsey McIvor has been injured as aforesaid.

## COUNT XIX
### (Misrepresentation – Chelsey McIvor)

100.    All of the allegations contained in Counts XVI, XVII, and XVIII are realleged and incorporated herein by reference.

101.    Medtronic represented to patients, including Plaintiff Chelsey McIvor and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

102.    Plaintiff Chelsey McIvor and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

103.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

104.    As a direct result of said false representations by Medtronic, Plaintiff Chelsey McIvor was injured as aforesaid.

## COUNT XX
### (Punitive Damages – Chelsey McIvor)

105.    All of the allegations contained in Counts XVI, XVII, XVIII, and XIX are realleged and incorporated herein by reference.

106.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Chelsey McIvor's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Chelsey McIvor by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXI
### (Negligence – Sherry Meadows)

107.   On or about June 27, 2006, Plaintiff Sherry Meadows purchased and was implanted with a Medtronic 7278 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the Mississippi Baptist Medical Center in Jackson, Mississippi.

108.   On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

109.   As a result of Medtronic's defective ICD leads, Plaintiff Sherry Meadows requires ongoing medical monitoring and may require surgery to replace said defective device.

110.   As a result of Medtronic's defective ICD leads, Plaintiff Sherry Meadows suffered injuries, including, but not limited to, anxiety from the current and future status of her ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

111.   Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXII
### (Strict Liability – Sherry Meadows)

112.   All of the allegations in Count XXI are reincorporated and alleged herein by reference.

113.   Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Sherry Meadows.

18

114.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff Sherry Meadows.

115.    The subject ICD lead implanted in Plaintiff Sherry Meadows was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

116.    Medtronic expected the ICD leads to reach consumers, including Plaintiff Sherry Meadows, in the condition in which it sold them.

117.    Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

118.    Said product was defective and unreasonably dangerous when put to its intended use.

119.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Sherry Meadows was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

120.    By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Sherry Meadows for her ICD lead-related injuries, losses, and damages.

## COUNT XXIII
### (Breach of Warranty – Sherry Meadows)

121.    All of the allegations contained in Counts XXI and XXII are realleged and incorporated herein by reference.

122.    At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

123.    Medtronic knew, or should have known, that patients, including Plaintiff Sherry Meadows and her attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

124.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

125.    As a direct result of the breach of warranties by Medtronic, Plaintiff Sherry Meadows has been injured as aforesaid.

**COUNT XXIV**
**(Misrepresentation – Sherry Meadows)**

126.    All of the allegations contained in Counts XXI, XXII, and XXIII are realleged and incorporated herein by reference.

127.    Medtronic represented to patients, including Plaintiff Sherry Meadows and her attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

128.    Plaintiff Sherry Meadows and her attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

129.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or

20

unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

130.    As a direct result of said false representations by Medtronic, Plaintiff Sherry Meadows was injured as aforesaid.

## COUNT XXV
### (Punitive Damages – Sherry Meadows)

131.    All of the allegations contained in Counts XXI, XXII, XXIII, and XXIV are realleged and incorporated herein by reference.

132.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Sherry Meadows's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Sherry Meadows by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXVI
### (Negligence – James Piro)

133.    On or about July 27, 2005, Plaintiff James Piro purchased and was implanted with a Medtronic 7304 ICD with a Sprint Fidelis lead model 6949. The device and leads were implanted at the Munster Community Hospital in Munster, Indiana.

134.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

21

135.    As a result of Medtronic's defective ICD leads, Plaintiff James Piro requires ongoing medical monitoring and may require surgery to replace said defective device.

136.    As a result of Medtronic's defective ICD leads, Plaintiff James Piro suffered injuries, including, but not limited to, inappropriate shocks, anxiety from the current and future status of his ICD leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

137.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of ICDs and ICD leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of ICD leads.

## COUNT XXVII
### (Strict Liability – James Piro)

138.    All of the allegations in Count XXVI are reincorporated and alleged herein by reference.

139.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing ICDs and ICD leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff James Piro.

140.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling ICDs and ICD leads, Medtronic sold the ICDs and ICD leads to other healthcare providers for use by and resale to patients, including Plaintiff James Piro.

141.   The subject ICD lead implanted in Plaintiff James Piro was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the ICD leads for distribution to various healthcare providers.

142.   Medtronic expected the ICD leads to reach consumers, including Plaintiff James Piro, in the condition in which it sold them.

143.   Said ICD leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

144.   Said product was defective and unreasonably dangerous when put to its intended use.

145.   As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff James Piro was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

146.   By reason of having marketed and promoted ICD leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff James Piro for his ICD lead-related injuries, losses, and damages.

## COUNT XXVIII
### (Breach of Warranty – James Piro)

147.   All of the allegations contained in Counts XXVI and XXVII are realleged and incorporated herein by reference.

148.   At all times relevant to this action, Medtronic marketed and promoted ICD leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

23

149.    Medtronic knew, or should have known, that patients, including Plaintiff James Piro and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

150.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

151.    As a direct result of the breach of warranties by Medtronic, Plaintiff James Piro has been injured as aforesaid.

## COUNT XXIX
### (Misrepresentation – James Piro)

152.    All of the allegations contained in Counts XXVI, XXVII, and XXVIII are realleged and incorporated herein by reference.

153.    Medtronic represented to patients, including Plaintiff James Piro and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject ICD lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

154.    Plaintiff James Piro and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject ICD lead.

155.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

156.    As a direct result of said false representations by Medtronic, Plaintiff James Piro was injured as aforesaid.

## COUNT XXX
### (Punitive Damages – James Piro)

24

157.    All of the allegations contained in Counts XXVI, XXVII, XXVIII, and XXIX are realleged and incorporated herein by reference.

158.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff James Piro's implant, had actual and constructive notice that the subject ICD leads were defective. Additionally, Medtronic knew or should have known that the subject ICD leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject ICD leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject ICD leads.    Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff James Piro by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their ICD leads.

## COUNT XXXI
### (Negligence – Albert Shultz)

159.    On or about September 20, 2007, Plaintiff Albert Shultz purchased and was implanted with a Guidant H217 cardiac resynchronization therapy device with a Medtronic Sprint Fidelis lead model 6949. The device and leads were implanted at Broward General Hospital in Fort Lauderdale, Flordia.

160.    On or about October 15, 2007, Medtronic issued a recall of certain of its Sprint Fidelis Leads, including Model 6949, due to defects in the leads.

161.    As a result of Medtronic's defective leads, Plaintiff Albert Shultz requires ongoing medical monitoring and may require surgery to replace said defective device.

162.    As a result of Medtronic's defective leads, Plaintiff Albert Shultz suffered injuries, including, but not limited to, anxiety from the current and future status of his Sprint

Fidelis leads, incurred medical expenses for care and treatment, and suffered physical and mental pain.

163.    Said injuries were the result of the negligence of Medtronic, including, but not limited to, failure to test, failure to warn, over-promotion of Sprint Fidelis leads, negligent design, negligent manufacturing, and failure to heed and report adverse reports regarding the safety of Sprint Fidelis leads.

### COUNT XXXII
### (Strict Liability – Albert Shultz)

164.    All of the allegations in Count XXXI are reincorporated and alleged herein by reference.

165.    Medtronic was at all relevant times engaged in designing, developing, testing, inspecting, promoting, advertising, manufacturing, and/or distributing Sprint Fidelis leads, which it sold and/or provided to various healthcare providers for implantation in patients as ultimate consumers throughout the United States, including Plaintiff Albert Shultz.

166.    While Medtronic was engaged in the designing, testing, inspecting, manufacturing, marketing, distributing, and/or selling Sprint Fidelis leads, Medtronic sold the Sprint Fidelis leads to other healthcare providers for use by and resale to patients, including Plaintiff Albert Shultz.

167.    The subject lead implanted in Plaintiff Albert Shultz was in the same form and condition in which it existed when Medtronic sold and/or provided and delivered the leads for distribution to various healthcare providers.

168.    Medtronic expected Sprint Fidelis leads to reach consumers, including Plaintiff Albert Shultz, in the condition in which it sold them.

26

169.    Said leads were defective when placed on the market by Medtronic. A reasonable seller would not have sold the product had he/she known of the risks involved. The risks were greater than a reasonable buyer would expect.

170.    Said product was defective and unreasonably dangerous when put to its intended use.

171.    As a result of Medtronic's marketing and promotion of said defective and unreasonably dangerous product, Plaintiff Albert Shultz was implanted with said defective device and has suffered injury, loss, and damages as aforesaid.

172.    By reason of having marketed and promoted Sprint Fidelis leads in their defective and unreasonably dangerous condition, Medtronic is strictly liable to Plaintiff Albert Shultz for his Sprint Fidelis lead-related injuries, losses, and damages.

### COUNT XXXIII
**(Breach of Warranty – Albert Shultz)**

173.    All of the allegations contained in Counts XXXI and XXXII are realleged and incorporated herein by reference.

174.    At all times relevant to this action, Medtronic marketed and promoted Sprint Fidelis leads accompanied by implied and express warranties and representations to physicians and their patients that the leads were efficacious to various cardiac conditions as directed for such purposes.

175.    Medtronic knew, or should have known, that patients, including Plaintiff Albert Shultz and his attending physicians, were relying on Medtronic's skills and judgments, and the implied and express warranties and representations.

176.    At all times relevant to this action, these implied and express warranties and representations were false, misleading, and unfounded.

27

177.    As a direct result of the breach of warranties by Medtronic, Plaintiff Albert Shultz has been injured as aforesaid.

## COUNT XXXIV
### (Misrepresentation – Albert Shultz)

178.    All of the allegations contained in Counts XXXI, XXXII, and XXXIII are realleged and incorporated herein by reference.

179.    Medtronic represented to patients, including Plaintiff Albert Shultz and his attending physicians, in promotion campaigns, advertisements, labeling, and literature that the subject lead was safe, effective, and adequately tested, which representations were made and publicized with the purpose and intent of having physicians and their patients rely on them.

180.    Plaintiff Albert Shultz and his attending physicians did, in fact, rely on Medtronic's representations in their advice about purchase, use, and implantation of the subject lead.

181.    At all times relevant to this action, these representations were known to Medtronic to be false or they were made by Medtronic in conscious, reckless and/or unreasonable disregard of facts available to Medtronic, indicating a lack of efficacy and a danger to patients.

182.    As a direct result of said false representations by Medtronic, Plaintiff Albert Shultz was injured as aforesaid.

## COUNT XXXV
### (Punitive Damages – Albert Shultz)

183.    All of the allegations contained in Counts XXXI, XXXII, XXXIII, and XXXIV are realleged and incorporated herein by reference.

184.    The acts of Medtronic were gross, wanton and intentional in that Medtronic, at the time of Plaintiff Albert Shultz's implant, had actual and constructive notice that the subject

Sprint Fidelis leads were defective. Additionally, Medtronic knew or should have known that the subject leads were ineffective, of no use and provided no benefit to the patient. Nonetheless, Medtronic knowingly and intentionally promoted the subject leads as safe and effective to treat various cardiac conditions disregarding the adverse reports that demonstrated the defective nature of the subject leads. Additionally, Medtronic fraudulently deceived the Food and Drug Administration, the cardiology profession and Plaintiff Albert Shultz by knowingly and intentionally withholding adverse reports, which it knew revealed the defective nature of their Sprint Fidelis leads.

**WHEREFORE,** Plaintiff Robert L. Bradley, Jr. demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE,** Plaintiff Audrey Hogan demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE,** Plaintiff Lloyd Hurd demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE,** Plaintiff Chelsey D. McIvor demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE,** Plaintiff Sherry Lynn Meadows demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE**, Plaintiff James D. Piro demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

**WHEREFORE**, Plaintiff Albert E. Shultz demands judgment against Medtronic in the sum of Two Million Dollars ($2,000,000.00), as compensatory damages and the sum of Two Million Dollars ($2,000,000.00) as punitive damages, plus costs.

Respectfully submitted,

AARON M. LEVINE & ASSOCIATES

Aaron M. Levine, #7864
Brandon J. Levine, #412130
Renee L. Robinson-Meyer, #455375
Steven J. Lewis, #472564
Benjamin J. Cooper, #502149
1320 19th Street, N.W., Suite 500
Washington, D.C. 20036
Phone: (202) 833-8040
Fax:    (202) 833-8046
aaronlevinelaw@aol.com

Counsel for Plaintiffs

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues of material facts.

Aaron M. Levine

30

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT L. BRADLEY, JR.,  )
510 Fifth Street N.E.  )
Pawnee, OK 74058  )          Civil Action No. _____
  )
     and  )
  )
AUDREY HOGAN,  )
9550 Fremont Avenue  )
Apartment D-7  )
Montclair, CA 91763  )
  )
     and  )
  )
LLOYD HURD,  )
6419 Wimbledon Villas  )
Spring, TX 77379  )
  )
     and  )
  )
CHELSEY D. MCIVOR,  )
404 West Montcastle Drive  )
Greensboro, NC 27406  )
  )
     and  )
  )
SHERRY LYNN MEADOWS,  )
Post Office Box 669  )
Mendenhall, MS 39114  )
  )
     and  )
  )
JAMES D. PIRO,  )
8529 Manor Avenue  )
Apartment B  )
Munster, IN 46321  )
  )
     and  )
  )
ALBERT E. SHULTZ,  )
1771 S.E. Tenth Street  )
Ft. Lauderdale, FL 33316  )
  )
     Plaintiffs,  )

1

|                          |       |
|--------------------------|-------|
| v.                       | )     |
|                          | )     |
|                          | )     |
| MEDTRONIC, INC.,         | )     |
| 710 Medtronic Parkway,   | )     |
| Minneapolis, MN, 55432   | )     |
|                          | )     |
|                Defendant.| )     |

## AFFIDAVIT OF KEYNA P. SKEFFINGTON

I, Keyna P. Skeffington, having been duly sworn on oath, hereby depose and state as follows:

1.    I am Assistant Secretary for Medtronic, Inc.

2.    Medtronic, Inc. is a corporation organized and existing under the laws of the State of Minnesota.

3.    A true and correct copy of a certificate of good standing issued by the Minnesota Secretary of State's Office demonstrating that Medtronic, Inc. is in good standing as of the date of such certificate is attached hereto as Exhibit 1.

4.    Medtronic, Inc.'s principal place of business is located in the State of Minnesota, at 710 Medtronic Parkway, Minneapolis, Minnesota.

FURTHER AFFIANT SAYETH NOT.


_____
KEYNA P. SKEFFINGTON

Subscribed to and sworn
Before me this _25_ day of
June, 2008

_____
Notary Public

LORNA KORRINE JOHNSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2011

2

# State of Minnesota

## SECRETARY OF STATE

Certificate of Good Standing

I, Mark Ritchie, Secretary of State of Minnesota, do certify that: The corporation listed below is a corporation formed under the laws of Minnesota; that the corporation was formed by the filing of Articles of Incorporation with the Office of the Secretary of State on the date listed below; that the corporation is governed by the chapter of Minnesota Statutes listed below; and that this corporation is authorized to do business as a corporation at the time this certificate is issued.

Name: Medtronic, Inc.

Date Formed: 04/23/1957

Chapter Governed By: 302A

This certificate has been issued on 12/28/07.



*Mark Ritchie*
Secretary of State.

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Robert L. Bradley, Audrey Hogan, Lloyd Hurd, Chelsey D. Mclvor, Sherry Lynn Meadows, Jamed D. Piro and Albert E. Schultz | Medtronic, Inc. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Pawnee, OK
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)** Hennepin, MN
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Aaron M. Levin
1320 19th Street, NW
Washington, DC 20036

ATTORNEYS (IF KNOWN)

Michael E. Lackey, Jr. & David M. Gossett
Mayer Brown LLP
1909 K Street, NW
Washington, DC 20006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
⊗ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⊗ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ⊗ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.** *Antitrust*

☐ 410 Antitrust

⊗ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☒ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*        **OR**        ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding  ● 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. §1446. 28 U.S.C. §1332 Diversity Products Liability Action: Plaintiff claims negligence. strict liability. warranty. misrepresentation. punitives

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** 28,000,000.00 | Check YES only if demanded in complain |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒  NO ☐ |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☐    If yes, please complete related case form.

**DATE** 6/30/08    SIGNATURE OF ATTORNEY OF RECORD    *Michael E. Landis, Jr. /or*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_Robert L. Bradley, JR. ETAL_
Plaintiff

v.

Civil Action No.      08 1135

                                          JUN 30 2008

_Medtronic, Inc._
Defendant

The above entitled action, removed from the Superior Court for the District of Columbia, has been filed and assigned to Judge **WALTON, J. RBW** . All counsel and/or pro se litigants must include on any subsequent pleadings both the civil action number and the initials of the judge assigned to this action. (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the bar of this Court to appear, file papers or practice. To assist the Clerk's Office in properly recording all counsel of record, counsel for all parties must enter their appearance in accordance with our Local Rule 83.6(a). Timely compliance with this requirement will enable the Clerk's Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer. This rule clearly spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _____
Deputy Clerk

cc: _AARON M. LEVINE_

929A
Rev. 7/02